(No. 18992.— )
CHARLES H. GLADER *et al.* Appellants, *vs.* TILLIE J.
SCHWINGE *et al.* Appellees.

*Opinion filed October 19, 1929—Rehearing denied Dec. 4, 1929.*

N. M. JONES, for appellants.

EDWIN D. LAWLOR, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

On November 10, 1922, John K. Greener, William E.
Campbell and Charles A. Wheldon, who claimed to be the
trustees of the Methodist Episcopal Church of Niles, Illi-
nois, filed their petition in the circuit court of Cook county
to have the title to certain real estate in the village of Niles
registered under the Torrens act. They alleged that the
premises were improved and occupied by a church building

owned by the petitioners and their predecessors since 1879. They made William Lupton, the unknown heirs of Benjamin Lupton, deceased, and all whom it might concern, parties defendant. Later, William Kulczyk and wife were made defendants. William Lupton and other heirs of Benjamin Lupton filed an answer, denying that the petitioners were possessed of or owned the premises and claiming that they were the real owners. They also filed a cross-petition, in which they prayed that the title be registered in them because the premises were abandoned by the trustees and the title reverted to them as heirs. The petitioners answered the cross-petition, setting up the facts under which they claimed title, denying that there was any abandonment or reverter or that said heirs were entitled to have the title registered. Kulczyk waived all rights to the premises and consented to the prayer of the petition. Tillie J. Schwinge, Elizabeth Ruland and Eliza Clark asked to be made parties to the petition, and on March 24, 1924, the first two filed a cross-petition, praying that they or other suitable persons be appointed trustees to carry out the intention of the grantors in the deed. The original petitioners filed their answer to this cross-petition, denying that the cross-petitioners had any right, title or interest in the property. On November 18, 1926, the death of Greener was suggested and it was alleged that Charles H. Glader was elected as his successor, and he was substituted as a petitioner. There was filed with the registrar of titles an instrument dated November 30, 1926, between the original petitioners as party of the first part, the heirs of Lupton as party of the second part and Frank E. Snell as party of the third part, in which it was recited that the parties of the first and second parts had executed deeds conveying their interest in the property to the party of the third part, who had put up with the registrar of titles $5000, and it was agreed that a decree should be entered registering the title in the petitioners, after which the deed was to be delivered to Snell

and the $5000 was to be paid to the first and second parties. The cause was referred to an examiner to take the evidence, and report his findings. The examiner found that the petitioners were entitled to have the title registered and that both cross-petitions should be dismissed. Exceptions were filed to this report, which were sustained by the chancellor, and a decree was entered, which found that on April 4, 1879, the premises were conveyed by Benjamin Lupton and wife to Thomas Wheldon, John Ketcham, Sr., and John Huntington, trustees of the Methodist Episcopal Society of Niles, with the privilege of other denominations using said church when convenient, by consent of the trustees; that the trustees named in the deed died many years ago and there were no legal successors authorized to act for them; that it was the duty of the court to protect the trust and appoint trustees to act; that Matilda J. Schwinge, John F. Calef and John Klusing be appointed trustees for the use of the society and other religious denominations, and that they are the owners in fee simple of the premises and that the title be registered in them. From that decree this appeal was prosecuted.

The evidence shows that in 1879, in the village of Niles, there was a voluntary association known as the Methodist Episcopal Society, which held religious meetings in the school house. On April 4, 1879, Benjamin Lupton and wife executed a warranty deed to the lands in question "to the Methodist Episcopal Society of the village of Niles, in the county of Cook and State of Illinois, party of the second part, with the privilege of other denominations using said church when convenient, by consent of the trustees." In the warranting clause was the following: "The said party of the first part [the grantors] shall and will warrant and forever defend the above mentioned society, Thomas Wheldon, John Ketcham, Sr., and John Huntington being appointed trustees." The trustees took possession of the land, and they and other members and friends of the church

erected a building thereon. The land was worth about $150 and the building erected was worth about $1500, of which Mrs. Huntington contributed $500. Church services were held in the building after it was erected, and the three original trustees continued to act until the death of Wheldon, in 1886, when his son, Charles A. Wheldon, claims to have been appointed as his successor, which office he claims to have held continuously since then, except for two or three years. Ketcham moved to Iowa in 1885 and died about 1904. Huntington acted as trustee about seventeen years and died in 1920. The record contains no written evidence of the election of any other trustees or the transaction of any business by this society prior to 1913, but church services were held in this building during that time, consisting of preaching and Sunday school. The record shows that in 1913 Eliza Clark, Tillie J. Schwinge (*nee* Tillie J. Ruland, one of the appellees herein,) and Elizabeth Ruland were elected trustees. In 1914 Charles Wheldon, George Ebbinger, John Greener, Elizabeth Ruland and H. Schwinge were elected trustees. In 1915 Ebbinger, Wheldon and Greener were elected, and they were re-elected in 1916. In 1916 to 1922, 1924 and 1927, the original petitioners, Wheldon, Campbell and Greener, were elected trustees.

It is claimed by the petitioners that in 1914 the Niles Church was by order of a bishop of the Methodist Episcopal Church consolidated with another church a mile away, known as Edison Park Church. There is no written evidence of this consolidation. The only evidence of the union consists of the testimony of the district superintendent to a conversation which he had with the bishop concerning the union; that after that time only one pastor was appointed for the two charges and the services were held at Edison Park. Services, consisting of preaching and Sunday school, were at irregular intervals held after 1913 at Niles by student pastors, who were paid by the congrega-

tion. It is claimed that the population of Niles about 1913 began to change. Foreigners moved in and the members of this church moved away, until very few, if any, members were left, and it was decided by the Edison Park Church to sell the property in question. The trustees who were elected after 1913 were elected by the quarterly conference of the Edison Park Church. It is claimed by appellees that there was no consolidation of the two organizations and that they received no notification of such consolidation and never consented thereto.

It is insisted by appellants that the deed from Benjamin Lupton and wife was a good and valid deed even though the grantee was not incorporated; that the uninterrupted and undisputed possession of the premises since 1879 was convincing proof of ownership by appellants; that since the death of the original trustees the persons appointed as trustees under the authority of the Methodist Episcopal Church have had sole care and continuous possession of the property as church property; that there has been no escheat, reverter or abandonment of the property; that the persons to whom the property would revert or escheat have consented to a decree in favor of appellants; that this was a charitable gift and should be sustained, and it will not be permitted to fail for want of trustees or for vagueness or indefiniteness.

It is insisted by appellees that the Lupton deed failed to provide for successors for the trustees named therein, and that a court of equity has the sole power to fill any vacancy; that the conveyance was not made subject to the control of the Methodist Episcopal Church or any other church body; that the Methodist Church was not the sole beneficiary, because other denominations were privileged to use the church; that the deed created a valid charitable trust, which should be upheld by a court of equity, and that in the absence of a restrictive covenant there could be no reverter to the heirs.

The supreme law-making power of the Methodist Episcopal Church is vested in a general conference, which meets every four years, and its laws are contained in the discipline. The territory covered by the church is divided into conferences, each presided over by a bishop. The land in question is within the jurisdiction of the Rock River conference, which is divided into districts, and the land in question was within the Chicago northern district and is now within the Chicago northwestern district, which district is presided over by a district superintendent. Paragraph 553 of the discipline of 1912 provides that the bishops shall have full power to consolidate charges and appoint one pastor for the united congregation. Paragraph 336 provides that the trustees shall be elected according to the laws of the State where the property is located. Paragraph 337 provides that the trustees shall be elected by ballot of the members of the church over twenty-one years old, at a meeting called for that purpose, at a date near to or not later than the fourth quarterly conference; that ten or more members may unite in a written request for such a meeting, and notice shall be given as to the date and place. Paragraph 338 provides that where no written request is made the trustees shall be elected annually at the fourth quarterly conference. Paragraph 335 provides that the trustees shall consist of not less than three nor more than nine persons, two-thirds of whom shall be members of the church. Paragraph 342 provides that all conveyances to incorporated churches shall be directly to the corporation. Paragraph 343 provides that in other cases conveyances shall be to the trustees and to their successors in office.

The only question before this court is as to who holds the fee simple title to this real estate. The power and authority of the bishop to consolidate these two churches are not disputed, but there is no documentary evidence that this authority was ever exercised. The only evidence of such

consolidation is the oral testimony of the district superintendent as to his conversation with the bishop in 1914, that thereafter only one pastor was appointed, and that the Edison Park Church quarterly conference elected the trustees for the united church. If there was no consolidation the quarterly conference of the Edison Park Church was without authority to elect trustees for both churches. The last trustees elected by the Niles Church were elected in 1913. Prior to that date there is no record of any election of trustees, and after that date the elections were by the Edison Park quarterly conference. Under the facts in evidence it is very questionable whether the trustees elected subsequent to 1913, including appellants, were the legal trustees.

Even conceding that the bishop did exercise his authority and that the consolidation was valid, that did not affect the title to this real estate provided the legal effect of the language used in the deed was to the contrary. Two or more church societies may be consolidated with a single pastor and one quarterly conference, but that does not necessarily change the title of the church property or affect the financial interests of the separate societies. (*Buhrnson* v. *Stoner*, 275 Ill. 41.) Where a deed to trustees for the benefit of a church society contains no express declaration of trust for the general body of any church denomination or for the teaching or practice of any particular religious principles or doctrines of faith, the right to the possession, control and use of the property is solely in the members of the church society. In *Calkins* v. *Cheney*, 92 Ill. 463, the deed was to the trustees of Christ Church, with no express declaration of trust. It was held that the property belonged to the society or congregation in its corporate capacity—not in trust for the benefit of the Protestant Episcopal Church as a religious denomination, but independent of it and not subject to the control of any ecclesiastical judicatory; that notwithstanding the fact that the

rector of Christ Church may have been deposed from the ministry of the Protestant Episcopal Church under competent ecclesiastical authority and the members of the parish or congregation still chose to attend upon his ministrations in their house of worship, this could not operate to divest the parish or congregation of the title to their property and of the right to occupy and use it in such manner and for such purpose as they might deem proper.

In *Illinois Classis of Reformed Church* v. *Holben*, 286 Ill. 473, the Mt. Zion charge was composed of two churches, one at Mt. Zion and the other at Stonington, neither of which was incorporated. One conveyance was made to the trustees of the Mt. Zion charge of the Reformed Church, and the other was made to the trustees of the Mt. Zion Church and the Mt. Zion Cemetery Association. It was held that though the grantees were not incorporated the deeds were not void but that all of the members of the respective congregations became beneficiaries of the property conveyed, citing *Christian Church* v. *Church of Christ*, 219 Ill. 503, and *Ferraria* v. *Vasconcellos*, 31 id. 25. On page 476 of the *Holben case, supra,* it was said: "The deeds contain no express declaration of trust for the benefit of the general body of any church denomination or for the teaching or practice of any particular religious principles or doctrines or faith in religious matters. Such deeds are solely for the benefit of the congregations whose trustees are named as the grantees, and the right to the possession, control and use of the property is vested solely in them. (*Calkins* v. *Cheney*, 92 Ill. 463.) In this respect the deeds differed from the deed in the case of *Buhrnson* v. *Stoner*, 275 Ill. 41, which was to the trustees named and their successors in trust for the uses of the Methodist Episcopal Church in America, according to the rules, usages and discipline of said church agreed upon at the general conference. It is immaterial whether the grantees were incorporated or not. It may be that these congregations

were subject to the discipline of the Reformed Church, but their property was not subject to the control of that church. * * * If the property was held by the trustees for the benefit of the Reformed Church and for the purpose of teaching and maintaining doctrines of that denomination, members of the congregations might complain if there was a diversion of the property from that purpose, but the church itself, which had no legal or equitable interest in the property, has no standing in a court of equity to do so."

The deed in question was not to the Methodist Episcopal Church in general, as was the deed in *Buhrnson* v. *Stoner, supra.* That church was not mentioned in the deed. The deed contained no express declaration of trust for the benefit of the general body of any church denomination or for the teaching of any particular religious principles or doctrines. The deed was to the Methodist Episcopal Society of Niles, with the privilege to other denominations of using the church when convenient, with the consent of the trustees. Three trustees were named in the deed. Under the authorities cited, this conveyance was for the sole benefit of the organizations whose trustees were named as grantees, and the right, title, possession, control and use of the property were vested solely in them. The deed contained no clause providing for a reverter, therefore the heirs of Lupton had no interest. The deed contained no provision for the appointment of successors to the original trustees; but this is a charitable trust, and it will not be permitted to fail because there is no provision for the appointment of trustees. That duty will devolve on a court of equity. (*Hitchcock* v. *Board of Home Missions,* 259 Ill. 288; *Hoeffer* v. *Clogan,* 171 id. 462.) Under the provisions of the deed, appellants, who filed the original petition to register the title, were not the owners of the property in fee simple and were not entitled to have the title registered in their names. The circuit court properly appointed trus-

tees to assume charge of the property and administer the trust, and the title was properly registered in the trustees so appointed.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*