The People's Gas Company *et al. v.* Tyner.

No. 15,136.

THE PEOPLE'S GAS COMPANY ET AL. *v.* TYNER.

| | |
|---|---|
| 131 | 277 |
| 131 | 412 |
| 131 | 599 |
| 131 | 277 |
| 143 | 107 |
| 191 | 277 |
| 147 | 628 |
| 131 | 277 |
| 148 | 104 |
| 150 | 30 |
| 150 | 35 |
| 150 | 44 |
| 131 | 277 |
| 163 | 690 |

INJUNCTION.—*Natural Gas.—Sinking Well.—Use of Explosives.—Adjoining Land-Owner.*—A land-owner has the legal right to sink a well on his own land, and draw therefrom all the gas that may naturally flow to it, although by so doing he may diminish the supply of an adjoining land-owner, and an injunction will not lie to prevent the use of an explosive in "shooting" a well on the ground that it will increase the flow of gas to the injury of an adjoining land-owner.

SAME.—If parties sink a gas well in the center of a thickly populated city where they can not collect the necessary quantity of nitro-glycerine to "shoot" it, without endangering the property and lives of those who have no connection with their operations, they must be content with such flow of gas as can be obtained without such "shooting," and an injunction will lie against them to prevent the accumulation or use of said explosive.

SAME.—*Act Complained of a Crime.*—The application for such an injunction can not be defeated, because the accumulation of nitro-glycerine within the corporate limits of a town or city is a crime. A private citizen may maintain an action for a public wrong, if he suffers an injury peculiar to himself, and not sustained by the general public.

SAME.—*Temporary.— What Sufficient to Authorize.*—To authorize a court to grant a temporary injunction it is not necessary that a case should be made that would entitle the plaintiff to relief at all events at the hearing. It is sufficient if the court find upon the pleadings and evidence a case which makes the transaction a proper subject for investigation in a court of equity.

From the Hancock Circuit Court.

*J. A. New, C. Downing* and *A. M. New,* for appellants.

*D. S. Gooding,* for appellee.

COFFEY, J.—This was an action by the appellee against the appellants, in the Hancock Circuit Court, for the purpose of obtaining an injunction.

The complaint alleges, substantially, that the appellee and his wife are the owners, by entireties, of the real estate therein described, which consists of four city lots in the city of Greenfield; that the lots are inclosed together by a fence, and that his dwelling house and residence, in which he and

his family reside, is situated on the lots; that the lots are near the center of the city, and, with his residence thereon, are of the value of four thousand dollars; that with full knowledge of all the facts the appellants, regardless of the rights of the appellee, and of the safety, peace, comfort and lives of himself and family, have, without his consent and over his objections, within the last forty days, dug and constructed a natural gas well, to the depth of about one thousand feet, and about two hundred feet distant from the appellee's residence, with only a street forty feet in width between the appellee's lots and the lot on which the well is sunk; that the appellants are about to "shoot" said well, and will do so unless restrained; that for the purpose of "shooting" the well, the appellants, about midnight of the — day of August, 1889, unlawfully procured to be brought, and unlawfully permitted a large quantity of nitro-glycerine, or other nitro-explosive compound, to be and remain upon Sycamore street, a public street in the city, and within less than two hundred feet of appellee's residence, for about three hours, in the midst of and surrounded by a large number of people; that appellants, by their employees, threatened and attempted to "shoot" said gas-well, and that they still threaten so to do with their said nitro-glycerine, or other nitro-explosive compounds, and will so do unless restrained; that nitro-glycerine is highly explosive and very dangerous to property and life, and is liable to explode under any and all circumstances, and at any time or place, and that an explosion of sixty or one hundred quarts of said explosive, at any given place on the surface of the earth could, and probably would, destroy life and property for a distance of five hundred yards in all directions from such explosion; that the handling or storing thereof in or about appellants' gas-well will endanger the lives of his family, as well as the safety of his property, and that the shooting of said well with nitro-glycerine will greatly injure and damage the appellee's said property both above

and under the surface of the earth, and endanger his life and and the lives of his family.

This complaint was verified, and upon it, and the affidavits filed in support of its allegations, the court granted a temporary injunction, from which this appeal is prosecuted.

The affidavits filed by the appellee tended to prove that the appellants' gas-well is within the corporate limits of the city of Greenfield; that a short time prior to the filing of the complaint in this cause, the appellants deposited in or near the derrick at the well, described in the complaint, about one hundred and seventeen quarts of nitro-glycerine, weighing about three hundred and forty pounds, with the intention of exploding the same in the well. The affidavits further tend to show that nitro-glycerine is very explosive, and that it is liable to explode at any time; that the explosion of that quantity of nitro-glycerine upon the surface of the earth would be likely to destroy life and property at any point within five hundred yards of such explosion.

It is contended by the appellants:

*First.* That they had the right to use their own property as to them seemed best, and, for that reason, they could not be enjoined from exploding nitro-glycerine in their well for the purpose of increasing the flow of natural gas, though such explosion might have the effect to draw the gas from the land of the appellee.

*Second.* That as bringing nitro-glycerine into the corporate limits of a town or city in a greater quantity than one hundred pounds is made a crime by statute, it can not be enjoined.

On the other hand, it is contended by the appellee:

*First.* That natural gas is property, and that the appellants have no legal right to do anything upon their own land which will draw such gas from his land, and appropriate it to their own use.

*Second.* That as he is liable to suffer an injury peculiar to himself, to which the public in general is not subject, by the

unlawful act of the appellants in bringing nitro-glycerine within the corporate limits of Greenfield, he is entitled, for that reason, to an injunction.

It has been settled in this State that natural gas, when brought to the surface of the earth and placed in pipes for transportation, is property, and may be the subject of interstate commerce. *State, ex rel.,* v. *Indiana, etc., Co.,* 120 Ind. 575.

Water, petroleum oil and gas are generally classed by themselves as minerals possessing, in some degree, a kindred nature. As to whether the owner of the soil may dig down and divert a well defined subterranean stream of water there is much diversity of opinion and conflict in the adjudicated cases, but the authorities agree that the owner of a particular tract of land may sink a well and appropriate to his own use all the percolating water found therein, though it may entirely destroy the well on his neighbor's land. Angell Watercourses, section 112; *Hanson* v. *McCue,* 42 Cal. 303; *Wheatley* v. *Baugh,* 25 Pa. St. 528; *Frazier* v. *Brown,* 12 Ohio St. 294; *Acton* v. *Blundell,* 12 M. & W. 324; *Delhi, Trustees, etc., of,* v. *Youmans,* 50 Barb. 316; *Mosier* v. *Caldwell,* 7 Nev. 363; *New Albany, etc., R. R. Co.* v. *Peterson,* 14 Ind. 112; *City of Greencastle* v. *Hazelett,* 23 Ind. 186.

It is a familiar maxim that in contemplation of law land always extends *downward* as well as upwards, so that whatever is in a direct line between the surface of any land and the center of the earth belongs to the owner of the surface. Mr. Angell says that it would seem to follow from this maxim that whether what is *subterranean* be solid rock, mines or porous soil, or salt springs, or part land and part water, the person who owns the surface may dig therein and apply all that is there found to his own purposes *ad libitum.* Angell Watercourses, section 109.

Upon this principle it was held by this court in the case of *New Albany, etc., R. R. Co.* v. *Peterson, supra,* that if an adjoining land-owner, in lawfully digging upon his own land,

draws the water from the land of another, to his injury, such injury falls within the description of *damnum absque injuria,* which can not become the ground of an action.

In the case of *Haldeman* v. *Bruckhart,* 45 'Pa. St. 514, it was said : " The purchaser of lands on which there are unknown subsurface currents, must buy in ignorance of any obstacle to the 'full enjoyment of his purchase indefinitely downwards, and the purchaser of lands on which a spring rises, ignorant whence and how the water comes, can not bargain for any right to a secret flow of water in another's land."

Mr. Gould, in his work on " Waters." (2d ed.), section 291, says : " Petroleum oil, like subterranean water, is included in the comprehensive idea which the law attaches to the word land, and is a part of the soil in which it is found. Like water, it is not the subject of property except while in actual occupancy, and a grant of either water or oil is not a grant of the soil or of anything for which ejectment will lie."

In recognition of the principle here announced, in the case of *Brown* v. *Vandegrift,* 80 Pa. St. 142, it was said by the court that " The discovery of petroleum led to new forms of leasing land. Its fugitive and wandering existence within the limits of a particular tract was uncertain, and assumed certainty only by actual development founded upon experiment."

What is said of the fugitive character of percolating water and of petroleum oil applies with greater force to natural gas.

In the case of *Westmoreland, etc., Gas Co.* v. *De Witt,* 130 Pa. St. 235, it was said : " Water and oil, and still more strongly gas, may be classed by themselves, if the analogy be not too fanciful, as minerals *feræ naturæ.* In common with animals, and unlike other minerals, they have the power and the tendency to escape without the volition of the owner. Their ' fugitive and wandering existence within the limits of a particular tract is uncertain.' * * They belong to the

owner of the land, and are part of it, so long as they are on or in it, and are subject to his control; but when they escape, and go into other land, or come under another's control, the title of the former owner is gone. Possession of the land, therefore, is not necessarily possession of the gas. If an adjoining, or even a distant, owner, drills his own land, and taps your gas, so that it comes into his well and under his control, it is no longer yours, but his."

It is not denied by the appellee in this case that the appellants have the perfect legal right to sink a well into their own land and draw therefrom all the gas that may naturally flow to it; but he contends that they have no right to explode nitro-glycerine in the well to increase the natural flow.

When it is once conceded that the owner of the surface has the right to sink a well and draw gas from the lands of an adjoining owner, no valid reason can be given why he may not enlarge his well by the explosion of nitro-glycerine therein for the purpose of increasing the flow. The question is not as to the quantity of gas he may take, but it is a question of his right to take the gas at all.

So far as this suit seeks to enjoin the appellants from exploding nitro-glycerine in their gas well, upon the ground that it will increase the flow of the gas to the injury of the appellee, it can not, in our opinion, be sustained.

The rule that the owner has the right to do as he pleases with or upon his own property is subject to many limitations and restrictions, one of which is that he must have due regard for the rights of others. It is settled that the owners of a lot may not erect and maintain a nuisance thereon whereby his neighbors are injured. If he does so, and the injury sustained by such neighbor can not be adequately compensated in damages, he may be enjoined. *Owen* v. *Phillips*, 73 Ind. 284.

If the appellants in this case have been guilty of the folly of sinking a gas well in the center of a thickly populated city where they can not collect the necessary quantity of

nitro-glycerine to shoot it without endangering the property and lives of those who have no connection with their operations, they should be content with such flow of gas as can be obtained without such shooting. It certainly can not be maintained that the destruction of human life is an injury which can be compensated in damages. No authority has been cited, and we know of none, supporting the position of the appellants that the appellee is not entitled to an injunction because the accumulation of nitro-glycerine within the corporate limits of a town or city is a crime. It has long been settled that a private citizen may maintain an action for a public wrong if he suffers an injury peculiar to himself and not sustained by the public in general. Blackstone Commentaries, bk. 3, p. 219; *Powell* v. *Bunger*, 91 Ind. 64; *Ross* v. *Thompson*, 78 Ind. 90; *Cummins* v. *City of Seymour*, 79 Ind. 491; *McCowen* v. *Whitesides*, 31 Ind. 235; *Fossion* v. *Landry*, 123 Ind. 136; *First Nat'l Bank, etc.*, v. *Sarlls*, 129 Ind. 201; *Adams* v. *Ohio Falls Co., post*, p. 375.

The sufficiency of the complaint, as it would be when tested by demurrer, is not involved here.

This is a mere temporary injunction. To authorize the court to grant such relief it was not necessary that a case should be made that would entitle the appellee to relief at all events at the hearing. In such cases it is sufficient if the court finds, upon the pleadings and evidence, a case which makes the transaction a proper subject for investigation in a court of equity. *Spicer* v. *Hoop*, 51 Ind. 365.

In our opinion the court did not err in granting the temporary injunction in this case.

Judgment affirmed.

Filed April 27, 1892.